**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HYUNDAI MOTOR COMPANY and HYUNDAI MOTOR AMERICA, <br><br> Plaintiffs, <br><br> v. <br><br> HONGFANGDI ART, <br><br> Defendant. | Case No. 26-cv-1560 <br><br> **Judge Sara L. Ellis** <br><br> **Magistrate Judge Heather K. McShain** |

**AMENDED COMPLAINT**

Plaintiffs Hyundai Motor Company and Hyundai Motor America (together, "Hyundai" or "Plaintiffs") hereby bring the present action against Hongfangdi art ("Defendant") and allege as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since Defendant directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce store operating under the seller alias Hongfangdi art (the "Seller Alias"). Specifically, Defendant has targeted sales to Illinois residents by setting up and operating an e-commerce store that targets United States consumers using at least the Seller Alias, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars from U.S. consumers, and,

on information and belief, has sold products using infringing versions of Plaintiffs' federally registered trademarks to residents of Illinois. Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiffs to combat an e-commerce store operator who trades upon Plaintiffs' reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, namely automotive parts and accessory products, using infringing versions of the federally registered Hyundai trademarks (the "Unauthorized Products"). Defendant created an e-commerce store operating under the Seller Alias that is advertising, offering for sale, and selling the Unauthorized Products to unknowing consumers. Defendant attempts to avoid and mitigate liability by operating under at least the Seller Alias to conceal both its identity and the full scope and interworking of its operation. Plaintiffs are forced to file this action to combat Defendant's infringement of the registered Hyundai trademarks, as well as to protect unknowing consumers from purchasing the Unauthorized Products over the Internet. Plaintiffs have been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of the valuable Hyundai trademarks as a result of Defendant's actions and seek injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4. Plaintiff Hyundai Motor Company is a Korean corporation with its principal place of business located at 12 Heolleung-ro Seocho-gu Seoul 06797, Republic of Korea.

5. Plaintiff Hyundai Motor America is a Californian corporation with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, 92708, California.

6. Hyundai Motor America is a subsidiary of Hyundai Motor Company.

7. Hyundai Motor Company was founded in 1967 and has risen to be one of the most preeminent automotive brands in the world. Hyundai is one of the largest producers of automotive vehicles in the world, with significant volume of vehicles sales in the United States and globally, resulting in substantial revenue. Hyundai Motor America, a subsidiary of HMC, has operated in the United States for over thirty years.

8. Hyundai is associated with some of the most famous brands in the automotive industry, including, but not limited to, Tucson, Elantra, Santa Fe, Kona, Palisade, N brands, and Genesis.

9. Propelled by their reputation and recognizable trademarks, which are carefully curated and monitored, consumers recognize Plaintiffs and the Hyundai brand as a source of reliable and quality vehicles, vehicle parts, and accessories (collectively, the "Hyundai Products"). Hyundai has registered many of the Hyundai trademarks with the United States Patent and Trademark Office. Hyundai Products typically include at least one of Hyundai's registered trademarks. Hyundai uses its trademarks in connection with the marketing of its Hyundai Products, including the following marks which are collectively referred to as the "Hyundai Trademarks."

| Registration Number | Trademark |
|---|---|
| 5,510,741<br>7,215,394<br>7,526,206<br>7,369,524<br>5,993,104 | N |
| 6,247,969 | N Performance |

10. The above U.S. registrations for the Hyundai Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Hyundai Trademarks constitute *prima facie* evidence of their validity and of Hyundai's exclusive right to use the Hyundai Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed Hyundai Trademarks are attached hereto as **Exhibit 1**.

11. The Hyundai Trademarks are distinctive when applied to the Hyundai Products, signifying to the purchaser that the products come from Hyundai and are manufactured to Hyundai's brand values. Whether Hyundai manufactures the products itself or contracts with others to do so, Hyundai has ensured that products bearing the Hyundai Trademarks are manufactured to brand values.

12. The Hyundai Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1). The innovative marketing and product designs of the Hyundai Products have enabled the Hyundai brand to achieve widespread recognition and fame and have made the Hyundai Trademarks some of the most well-known marks in the industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Hyundai brand have made the Hyundai Trademarks valuable assets of Hyundai.

13. Hyundai has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Hyundai Trademarks. In fact, Hyundai invested substantial resources in advertising, promoting, and marketing products featuring the Hyundai Trademarks. Hyundai Products have also received media attention and consumer interest due to their high quality, performance, and innovative design. As a result, products bearing the Hyundai Trademarks are widely recognized and associated by consumers, the public, and the trade as being

high-quality products sourced from Hyundai. Hyundai Products have become widely recognized in the U.S. and the world. The Hyundai Trademarks have achieved significant fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the Hyundai Trademarks is of incalculable and inestimable value to Hyundai.

14. Hyundai Products are sold to consumers through authorized dealerships, including several in the Chicago area. Hyundai has a website at https://www.hyundaiusa.com/ which allows customers to search for a dealership near their location. The https://www.hyundaiusa.com/ website features proprietary content, images, and designs exclusive to the Hyundai brand.

**The Defendant**

15. Defendant is an individual and/or business entity of unknown makeup who owns and/or operates at least the e-commerce store under the Seller Alias and/or other seller aliases not yet known to Plaintiffs. On information and belief, Defendant resides and/or operates in the People's Republic of China or other foreign jurisdictions, or redistributes products from the same or similar sources in those locations. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. On information and belief, Defendant operates the e-commerce store under the Seller Alias. Tactics used by Defendant to conceal its identity and the full scope of its operations make it virtually impossible for Plaintiffs to learn Defendant's true identity and the exact interworking of its infringement network. If Defendant provides additional credible information regarding its identity, Plaintiffs will take appropriate steps to amend the Amended Complaint.

### IV. DEFENDANT'S UNLAWFUL CONDUCT

17. The success of the Hyundai brand has resulted in significant infringement of the Hyundai Trademarks. Consequently, Hyundai has an anti-counterfeiting program and regularly

investigates suspicious e-commerce stores. In recent years, Hyundai has encountered numerous fully interactive, e-commerce stores offering Unauthorized Products on online marketplace platforms, including the e-commerce store operating under the Seller Alias. The Seller Alias targets consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[1] The primary source of all those counterfeits, the OECD and others say, is China.[2]

18. Third party service providers like those used by Defendant do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[3] Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[4] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[5] Further, "E-commerce platforms

---

[1] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[2] *Id.; See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[3] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[4] Combating Trafficking in Counterfeit and Pirated Goods, *supra* note 4, at 22.

[5] *Id.* at p. 39.

create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[6]

19. Defendant has targeted sales to Illinois residents by setting up and operating an e-commerce store that targets United States consumers using at least the Seller Alias, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars from U.S. consumers and, on information and belief, has sold the Unauthorized Products to residents of Illinois. Screenshots evidencing Defendant's infringing activities are attached as **Exhibit 2**.

20. For example, Defendant facilitates sales of the Unauthorized Products by designing the e-commerce store operating under the Seller Alias so that it appears to unknowing consumers to be an authorized online retailer, outlet store, or wholesaler. The e-commerce store operating under the Seller Alias appears sophisticated and accepts payment in U.S. dollars from U.S. consumers. The e-commerce store operating under the Seller Alias often includes content and images that make it very difficult for consumers to distinguish it from an authorized retailer. On information and belief, Hyundai has not licensed or authorized Defendant to use any of the Hyundai Trademarks, and Defendant is not an authorized retailer of genuine Hyundai Products.

21. E-commerce store operators like Defendant also deceive unknowing consumers by using one or more Hyundai Trademarks without authorization within the content, text, and/or meta-tags of its e-commerce store to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Hyundai Products. Other e-commerce stores omit using Hyundai Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Hyundai Products.

---

[6] Chow, *supra* note 4, at p.186-87.

22. E-commerce store operators like Defendant commonly engage in fraudulent conduct when registering seller aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identity and the scope of their e-commerce operation.

23. E-commerce store operators like Defendant regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendant to conceal their identities, the full scope and interworking of its operation, and to avoid being shut down.

24. E-commerce store operators like Defendant are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25. Infringers such as Defendant typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiffs' enforcement. E-commerce store operators like Defendant maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiffs. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

26. Defendant is working to knowingly and willfully import, distribute, offer for sale, and sell the Unauthorized Products. Defendant, without any authorization or license from Hyundai,

8

has knowingly and willfully used and continue to use the Hyundai Trademarks in connection with the advertisement, distribution, offering for sale, and sale of the Unauthorized Products into the United States and Illinois over the Internet.

27. Defendant's unauthorized use of the Hyundai Trademarks in connection with the advertising, distribution, offering for sale, and sale of the Unauthorized Products, including the sale of the Unauthorized Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

29. This is a trademark infringement action against Defendant based on its unauthorized use in commerce of counterfeit imitations of the federally registered Hyundai Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Hyundai Trademarks are distinctive marks. Consumers have come to expect the highest quality from Hyundai Products sold or marketed under the Hyundai Trademarks.

30. Defendant has sold, offered to sell, marketed, distributed, and advertised, and is still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Hyundai Trademarks without Hyundai's permission.

31. Plaintiffs are the exclusive owners of the Hyundai Trademarks. The United States Registrations for the Hyundai Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendant has knowledge of Plaintiffs' rights in the Hyundai Trademarks and is willfully infringing and intentionally using counterfeits of the Hyundai Trademarks. Defendant's

9

willful, intentional, and unauthorized use of the Hyundai Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

32. Defendant's activities constitute willful trademark infringement and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33. Hyundai has no adequate remedy at law and, if Defendant's actions are not enjoined, Hyundai will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Hyundai Trademarks.

34. The injuries and damages sustained by Hyundai have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of the Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

35. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

36. Defendant's promotion, marketing, offering for sale, and sale of the Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Hyundai or the origin, sponsorship, or approval of Defendant's Unauthorized Products by Hyundai.

37. By using the Hyundai Trademarks in connection with the sale of the Unauthorized Products, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

38. Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39. There is no adequate remedy at law and, if Defendant's actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to the reputation and the associated goodwill of the Hyundai brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1) That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with it be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Hyundai Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not a genuine Hyundai Product or is not authorized by Hyundai to be sold in connection with the Hyundai Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any products as genuine Hyundai Products or any other products produced by Hyundai that are not Hyundai's, or not produced under the authorization, control, or supervision of Hyundai and approved by Hyundai for sale under the Hyundai Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendant's Unauthorized Products are those sold under the authorization, control, or supervision of Hyundai, or are sponsored by, approved by, or otherwise connected with Hyundai;

    d. further infringing the Hyundai Trademarks and damaging Hyundai's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Hyundai, nor authorized by Hyundai to be sold or offered for sale, and which bear any of Hyundai's trademarks, including the Hyundai Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiffs' request, those with notice of the injunction including, without limitation, any online marketplace platforms such as Temu and PayPal (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of counterfeit and infringing goods using the Hyundai Trademarks;

3) That Defendant account for and pay to Plaintiffs all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the Hyundai Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the Hyundai Trademarks;

5) That Plaintiffs be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 12th day of February 2026.     Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Trevor C. Talhami
Greer, Burns & Crain, Ltd.
200 W. Madison St. Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
ttalhami@gbc.law

*Counsel for Plaintiffs Hyundai Motor Company and Hyundai Motor America*